103 N.J. Super. 500 (1968)
247 A.2d 701
ROBERT TOKER AND MILDRED TOKER, DOING BUSINESS AS BUDGET ASSOCIATES OF NEW JERSEY, PLAINTIFFS,
v.
JEFFREY OTTO PERL, ALSO KNOWN AS JEFFERSON OTTO PERL, AND DIANE PERL, DEFENDANTS.
Superior Court of New Jersey, Law Division.
Decided November 13, 1968.
Mr. Charles B. Turner, attorney for plaintiffs.
Mr. Ronald B. Rosen for defendants (Mr. George M. Chamlin, attorney).
*501 TRIARSI, J.D.C., (temporarily assigned).
This is a suit for a deficiency under an installment sales contract made between defendants and People's Foods of New Jersey, Inc. assignor of the plaintiffs.
On September 5, 1966 an agent of People's Foods, Inc. arrived at defendants' home for a prearranged appointment. The ensuing interview, which lasted about three hours, centered around food plans that could be arranged by People's Foods. For the first 2 1/2 hours no mention was made of a freezer. However, sometime within the last half-hour of the interview, when it became apparent that the plan called for the purchase of 18 weeks of food at a time, defendants mentioned that they had no facilities to store such a large quantity of food. The agent replied that a freezer was included in the food plan.
Following the explanation of the food plan, and when Mrs. Perl was out of the room, the agent presented three forms to defendant husband and asked him to sign them. He was informed that the documents were the agreed-upon plan for 18 weeks of food.
The forms were placed before defendant, one on top of the other, leaving visible only the signature line on the lower two forms. The top page was the food plan contract. When Mrs. Perl returned she also signed the three forms which were presented to her in the same manner as they had been presented to her husband.
The agent left the house around midnight, at which time defendants retired for the evening. The next morning defendants examined the papers they had signed and discovered that in addition to the food plan they had signed a financing application and an installment contract for a freezer.
Defendants immediately attempted to cancel the freezer contract. However, all communications with People's Foods proved fruitless. Thereafter both the freezer and a quantity of food were delivered to defendants' residence.
In addition to the unwanted freezer, defendants found that the quality and quantity of food delivered was not in *502 conformity with the contract nor the representations made to them. After People's Foods failed to rectify this, defendants ceased making payments on the freezer.
All of these undeniable facts were established from the wholly credible evidence offered by defendants. Plaintiffs did not offer any evidence in contravention.
Sometime after the signing of the contract plaintiffs, who trade under the name of Budget Associates of New Jersey, were assigned the installment contract. They, in turn, assigned the contract to the Community National Bank and Trust Company of Richmond, with recourse.
At trial defendants presented an expert witness who testified that the freezer delivered by People's Foods had a maximum value of $300. The installment contract signed by defendants provided for a purchase price of $799.95, sales tax of $24, group creditor life insurance of $16.93 and a credit service charge or time-price differential of $252.08. The total price of the freezer was $1,092.96, to be paid in 36 monthly installments of $30.36.
It has been stipulated that plaintiffs are subject to any defenses defendants may allege against their assignor, People's Foods.
Defendants allege fraud in the procurement of the contract by the agent of People's Foods, and also that the contract is unconscionable under N.J.S. 12A:2-302.
It is beyond contention in this State that a knowing misrepresentation by one party as to the contents of a contract amounts to fraud. Such a contract may be voided on the theory that the defrauded party never agreed to the terms of the contract. McDonald v. Central Railroad Co. of New Jersey, 89 N.J.L. 251 (E. & A. 1916).
In the present case it is the opinion of this court that People's Foods defrauded defendants when it procured their signatures on the freezer contract. Their agent led defendants to believe that the freezer was included in the price for the food plan. Nowhere in the record is there any evidence *503 that defendants ever knew they were signing an installment contract for a freezer.
Plaintiffs, however, contend that the failure of defendants to read what they were signing contributed to their own misfortune. It is therefore plaintiffs contention that defendants should be estopped from alleging fraud because of their own negligence.
This court does not disagree with plaintiffs' statement of the law. It agrees with it. N.J. Mortgage & Investment Co. v. Dorsey, 60 N.J. Super. 299 (1960), affirmed 33 N.J. 448 (1960). However, this court is constrained to apply the doctrine of the late Mr. Justice Frankfurter in United States v. Bethlehem Steel Corp., 315 U.S. 289, 62 S.Ct. 581, 86 L.Ed. 855 (1942), as adopted by our own Supreme Court in Unico v. Owen, 50 N.J. 101 (1967). He said:
"* * * [T]he courts will not permit themselves to be used as instruments of inequality and injustice[.] Does any principle in our law have more universal application than the doctrine that courts will not enforce transactions in which the relative positions of the parties are such that one has unconscionably taken advantage of the necessities of the other?" (at p. 111-112)
See also Henningsen v. Bloomfield Motors, Inc., 32 N.J. 358 (1960). If this court were to hold that defendants were negligent and therefore estopped from alleging fraud, it would permit itself to be used as an instrumentality of "inequality and injustice."
The facts in Westfield Investment Co. v. Fellers, 74 N.J. Super. 575 (Law Div. 1962), are remarkably similar to the facts of the case at bar. There, too, defendants signed a conditional sales contract for a freezer in the belief that they were signing a food plan contract. And there also the court felt that plaintiffs' actions were fraudulent.
It is also the opinion of this court that the exorbitant price of the freezer makes this contract unconscionable and therefore unenforceable. N.J.S. 12A:2-302 provides:
*504 "(1) If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made, the Court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result."
Although the courts of this State have never been asked to apply this section of the Uniform Commercial Code to the price term of a contract, our sister state of New York has recently held that "excessively high prices may constitute unconscionable contractual provisions within the meaning of section 2-302 of the Uniform Commercial Code. Central Budget Corp. v. Sanchez, 53 Misc.2d 620, 279 N.Y.S.2d 391, 392 (Sup. Ct. 1967). See also Frostifresh Corp. v. Reynoso, 52 Misc.2d 26, 274 N.Y.S.2d 757 (Sup. Ct. 1966), reversed on other grounds, 54 Misc.2d 119, 281 N.Y.S.2d 964 (App. Div. 1967), where the issue of fraud was not before the court but the contract was not enforced according to its tenor solely on the grounds of unconscionability.
The conscience of this court is shocked by the price imposed upon these defendants for the freezer. The testimony in court valued the freezer at no more than $300. The price charged was in excess of 2 1/2 times the maximum value. The time-price differential alone almost equalled the value of the freezer. In the light of these facts, this court is constrained to hold the price in this contract unconscionable.
It is therefore the opinion of this court that the contract is unenforceable because it was procured by fraud and is unconscionable.