Bernice **PATTERSON**, Appellant,

v.

**WALKER–THOMAS FURNITURE CO.,**
Inc., Appellee.

No. 5393.

District of Columbia Court of Appeals.

Argued Dec. 7, 1970.

Decided May 10, 1971.

Maribeth Halloran, Washington, D. C., with whom Richard B. Wolf, Washington, D. C., was on the brief for appellant.

Jordan M. Spivok, Chevy Chase, Md., with whom Harry Protas and Robert L.

Kay, Chevy Chase, Md., were on the brief, for appellee.

Before KELLY, KERN and PAIR, Associate Judges.

KELLY, Associate Judge.

According to an agreed statement of proceedings and evidence the appellant, Mrs. Bernice Patterson, bought merchandise from appellee in three separate transactions during 1968. In January she bought an 18-inch Emerson portable television, with stand, for $295.95, signing an installment contract which obligated her to pay appellee $20 a month on account. In March she bought a five-piece dinette set for $119.95, increasing her monthly payments to $24. In July she purchased a set of wedding rings for $159.95 and the payments rose to $25 per month. The total price for all the goods, including sales tax, was $597.25. Mrs. Patterson defaulted in her payments after she had paid a total of $248.40 toward the agreed purchase price.

Appellant answered [1] Walker-Thomas' action to recover the unpaid balance on the contracts by claiming, in pertinent part,[2] that she had paid an amount in excess of the fair value of the goods received and that the goods themselves were so grossly overpriced as to render the contract terms unconscionable and the contracts unenforceable under the Uniform Commercial Code as enacted in the District of Columbia.[3]

1. Originally, appellant filed a pro se answer stating she was behind in her payments because of illness and that Walker-Thomas had refused to accept a partial payment on account. She was later allowed to file an amended answer.

2. A second affirmative defense, that the contract had been reformed by setting new terms of payment, was not pursued. Nor does appellant complain of the court's action in striking her counterclaim for damages.

3. D.C.Code 1967, § 28:2–302. Unconscionable contract or clause.
   (1) If the court as a matter of law finds the contract or any clause of the

Objections to interrogatories addressed to appellee in an effort to establish her defense that the goods were in fact grossly overpriced were sustained, the court ruling in part that the information sought was outside the scope of discovery "because the defense of unconscionability based on price is not recognized in this jurisdiction". It ruled further "that certain information sought was readily obtainable to defendant by resort to the contracts admittedly in her possession and that certain of the interrogatories amounted to 'harassment of the business community'."

Appellant persisted in her efforts to present the defense of unconscionability by issuing a subpoena *duces tecum* for the production of appellee's records, and, alleging indigency, by moving for the appointment of a special master or expert witness to establish the value of the goods, the price Walker-Thomas paid for them, and their condition (whether new or secondhand) when she purchased them. The pretrial judge quashed the subpoena *duces tecum* on the ground that appellant was precluded from obtaining the same information by means of the subpoena that she had been denied through the use of interrogatories. The motion to appoint a special master or expert witness was also denied.

A trial judge subsequently held that the prior rulings of the motions judge and the pretrial judge established the law of the

contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result.
   (2) When it is claimed or appears to the court that the contract or any clause thereof may be unconscionable the parties shall be afforded a reasonable opportunity to present evidence as to its commercial setting, purpose and effect to aid the court in making the determination.

case. Inasmuch as appellant's then sole defense was that the goods were grossly overpriced and no proof on this issue was presented, the court entered judgment for appellee.[4] We affirm.

Suggested guidelines for deciding whether or not a contract is unconscionable appear in Williams v. Walker-Thomas Furniture Co., 121 U.S.App.D.C. 315, 319–320, 350 F.2d 445, 449–450, 18 A.L.R.3d 1297, 1301–1303 (1965), as follows:[5]

> Unconscionability has generally been recognized to include an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party. Whether a meaningful choice is present in a particular case can only be determined by consideration of all the circumstances surrounding the transaction. In many cases the meaningfulness of the choice is negated by a gross inequality of bargaining power. * * *

> In determining reasonableness or fairness, the primary concern must be with the terms of the contract considered in light of the circumstances existing when the contract was made. The test is not simple, nor can it be mechanically applied. The terms are to be considered "in the light of the general commercial background and the commercial needs of the particular trade or case." Corbin suggests the test as being whether the terms are "so extreme as to appear unconscionable according to the mores and business practices of the time and place." (Citation omitted.) We think this formulation correctly states the test to be applied in those cases where no meaningful choice was exercised upon entering the contract. (Footnotes omitted.)

Later, citing *Williams* in another context, this court said that "two elements are required to exist to prove unconscionability; i. e., 'an absence of meaningful choice on the part of one of the parties together with contract terms which are *unreasonably favorable to the other party*.'" Diamond Housing Corp. v. Robinson, D.C. App., 257 A.2d 492, 493 (1969). (Emphasis in the original.)

■ On the basis of these authorities we conclude that in a proper case gross overpricing may be raised in defense as an element of unconscionability.[6] Under the test outlined in *Williams* price is necessarily an element to be examined when determining whether a contract is reasonable. The Corbin test mentioned in the opinion specifically deals with the "terms"

4. The agreed statement of proceedings and evidence says (R. 79, 80) that "[d]efendant [appellant], not present in Court, proferred [sic] testimony through counsel and over objection of plaintiff [appellee] that in January 1968 defendant had bad credit at Montgomery Ward, the store at which she previously made her household purchases; defendant did not have credit lines established at any other retail store; defendant met a salesman of Walker-Thomas who, understanding defendant's credit situation, encouraged her to go to plaintiff's store and represented to defendant that credit would be available to her at Walker-Thomas; and relying on this representation defendant went to plaintiff's store, was extended credit and executed the first of the series of three contracts upon which plaintiff sues." The proffered testimony, of course, is not evidence in this case. An offer of proof is made when testimony to be given by a witness in court is, upon objection, excluded by the court. It is not made through counsel when the witness is not present to testify. *See generally* 88 C. J.S. Trial § 73 (1955).

5. Although *Williams* was decided on principles of common law, it is upon those principles that § 28:2–302 is based.

6. Other courts have said that in certain circumstances excessive price might constitute an unreasonable contractual provision within § 28:2–302. *See* Toker v. Perl, 103 N.J.Super. 500, 247 A.2d 701 (1968); Central Budget Corp. v. Sanchez, 53 Misc.2d 620, 279 N.Y.S.2d 391 (1967); State by Lefkowitz v. ITM, Inc., 52 Misc.2d 39, 275 N.Y.S.2d 303 (1966); American Home Improvement, Inc. v. MacIver, 105 N.H. 435, 201 A.2d 886, 889, 14 A.L.R.3d 324, 328–329 (1964).

of the contract and certainly the price one pays for an item is one of the more important terms of any contract. We emphasize, however, that price as an unreasonable contract term is only one of the elements which underpin proof of unconsionability. Specifically, therefore, in the instant case the reasonableness of the contracts is not to be gauged by an examination of the price stipulation alone or any other term of the contract without parallel consideration being given to whether or not appellant exercised a meaningful choice in entering into the contracts.

■ We conclude also that because excessive price-value may comprise one element of unconscionability, discovery techniques may be employed to garner information relevant to that issue for purposes of defense. By statute, upon a claim of unconscionability, the court determines as a matter of law whether a contract or any clause thereof is unconscionable *only* after the parties have been given a reasonable opportunity to present evidence as to its commercial setting, purpose and effect. Certainly, therefore, interrogatories may be used to develop evidence of the commercial setting, purpose and effect of a contract at the time it was made in order to assure an effective presentation of the defense at an evidentiary hearing.

In our judgment, however, appellant here was not erroneously precluded from developing evidence through the use of interrogatories by the ruling of the trial court. Having said that under proper circumstances excessive price may be a component of the defense of unconscionability and that discovery techniques may be used to develop that defense, we are nevertheless of the opinion that a sufficient factual predicate for the defense must be alleged before wholesale discovery is allowed. An unsupported conclusory allegation in the answer that a contract is unenforceable as unconscionable is not enough. Sufficient facts surrounding the "commercial setting, purpose and effect" of a contract at the time it was made should be alleged so that the court may form a judgment as to the existence of a valid claim of unconscionability and the extent to which discovery of evidence to support that claim should be allowed.

■ Admittedly, appellant neither alleged nor attempted to prove the existence of any fraud, duress or coercion when she entered into the instant contracts. Her verified complaint alleges only that the goods she purchased and still retains were grossly overpriced and that she has already paid appellee a sum in excess of their fair value. These are conclusions without factual support. It cannot be said that the goods were grossly overpriced merely from an examination of the prices which appear on the face of the contracts. No other term of the contract is alleged to be unconscionable, nor is an absence of meaningful choice claimed.[7] We hold that the two elements of which unconscionability is comprised; namely, an absence of meaningful choice and contract terms unreasonably favorable to the other party, must be particularized in some detail before a merchant is required to divulge his pricing policies through interrogatories or through the production of records in court.[8] An answer, such as the one here, asserting the affirmative defense of unconscionability only on the basis of a stated conclusion that the price is excessive is insufficient.

Accordingly, the judgment of the trial court is

Affirmed.

---

7. The proffered testimony at trial is the first mention of any purported facts surrounding these transactions.

8. The same reasoning applies to a request for appointment of a master or expert witness.