Anthony SMITH

v.

ABC RENTAL SYSTEMS OF NEW
ORLEANS, INC.

Civ. A. No. 77–2733.

United States District Court,
E. D. Louisiana.

Aug. 11, 1978.

Robert H. Matthews, Patrick D. Breeden, New Orleans, La., for plaintiff.

Leopold Z. Sher and B. Franklin Martin, III, New Orleans, La., for defendant.

MEMORANDUM OPINION

EDWARD J. BOYLE, Sr., District Judge:

In this suit plaintiff has urged alternative claims based on the Federal Consumer Leasing Act of 1976, 15 U.S.C. § 1667, and the Federal Truth in Lending Act, 15 U.S.C. § 1601 *et seq.* Trial was held before the court on April 8, 1978.

Plaintiff alleged that he was first attracted to do business with ABC Rental Systems of New Orleans, Inc. (ABC), defendant herein, when he witnessed a television commercial featuring defendant's rental purchase plan. Under this plan ABC would rent T.V. sets to its customers at a stipulated weekly or monthly rate. If the customer

paid these rental fees for a total of 18 months, the set would become his. After a phone call to defendant to verify the information given in the advertisement, on April 27, 1977, plaintiff visited ABC's place of business to select a T.V. set. At this time plaintiff stated that he desired to enter into such a rental purchase agreement and asked questions concerning the set, but he testified that he neither sought nor was given any information about the rental purchase plan itself. Later that same day an employee of ABC, driving its truck, delivered a T.V. set to plaintiff's home. After the set was delivered and set up, the driver presented plaintiff with a form for his signature. (Exhibit Anthony Smith A). The form is labelled, in bold print, "Rental Agreement," and it recites, among other things, that it is a rental agreement only, that it is a week to week agreement, that it is terminable by either party at any time, and that title at all times remains in the renter, ABC. In blank spaces at the top of the form plaintiff's name appears typed in, and in the space provided for the weekly rental rate, defendant's office has typed in "$16.00/55.00." It was explained at trial that this represents the weekly rental rate, and the reduced monthly rental rate available if a customer chooses to pay monthly. Plaintiff's signature appears at the bottom of the form, but he admitted that he did not read the form prior to signing it. The parties have stipulated that plaintiff was not provided with any disclosures under either the Truth in Lending Act or the Consumer Leasing Act.

It is plaintiff's contention that, based on the representations made in defendant's advertising concerning the rental purchase plan, he was given to understand that he was purchasing the T.V. set in question rather than renting it and that, as in any other sale, he was obligated to make the stipulated payments for 18 months. Plaintiff submitted copies of T.V. and radio ads used by defendant. These ads stressed, among other things, that consumers "need to know before [they] *buy*," (Exhibits Anthony Smith D, L) that they could rent to own (Exhibits Anthony Smith E, H, I), and

that all of their payments would count toward ownership or purchase of the set. (Exhibits Anthony Smith F, I, K). Defendant's delivery truck, store front, and telephone directory listing all prominently featured the term "Rental Purchase Plan." (Exhibits Anthony Smith G, S, T). This rental purchase plan is nowhere mentioned in the rental agreement, nor does it appear in written form in any other document. Defendant's president testified that ABC merely gave the rented item to the renter who paid the rental for eighteen months.

Plaintiff admitted that he did not read the rental agreement given him to sign at the time of delivery of the set and did not read it until some weeks later when defendant tried to pick the set up for non-payment of rent. Rather, relying on the advertisement he saw on television, he claims that it was his understanding that what he had contracted for was an ordinary purchase whereby he was obligated for 18 months of weekly payments. He did not, however, claim that any of ABC's employees ever told him that he was obligated to keep the set for any period of time or to make payments for all of the 18 months. Also, it appears that no credit check was made by ABC, though information was required for purposes of determining that the renter was who he claimed he was and to locate him and the property should it become necessary to "chase" both in the event the renter failed to pay, did not return the property and moved from the address given. (*See* Exhibit B).

In this regard defendant's president and its manager both testified that their customers are not required to rent for any period beyond a minimum of one week, but rather that, in accord with the rental agreement, all customers are on a week-to-week rental plan which they can terminate at any time. Defendant's manager testified that 73% of their customers keep their sets less than four months and that most of these keep their set one month or less.

■ We find that the transaction between plaintiff and defendant in this case is

not cognizable under either the Consumer Leasing Act or the Truth in Lending Act. The Consumer Leasing Act provides, *inter alia*, that: "The term 'consumer lease' means a contract in the form of a lease . . . *for a period of time exceeding four months* . . . ." 15 U.S.C. § 1667(1) (emphasis added). The agreement signed by plaintiff clearly states that it is a week-to-week rental agreement only and there was no testimony by plaintiff or any other witness which would establish that he was told that he was obligated to make payments for *any* period of time other than for each additional week he chose to keep the set. Obviously, this transaction is not a "consumer lease" within the meaning of 15 U.S.C. § 1667(1).

 The Truth in Lending Act defines a credit sale as follows:

> The term "credit sale" refers to any sale with respect to which credit is extended or arranged by the seller. The term includes any contract in the form of a bailment or lease if the bailee or lessee contracts to pay as compensation for use a sum substantially equivalent to or in excess of the aggregate value of the property and services involved and it is agreed that the bailee or lessee will become, or for no other or a nominal consideration has the option to become, the owner of the property upon full compliance with his obligations under the contract.

15 U.S.C. § 1602(g). Thus, to be within the Act's coverage, the lessee must be obligated to pay a sum at least as great as the value of the property. Under the terms of the instant rental agreement, plaintiff was never obligated for any sum other than the $16.00 weekly rental for each week he chose to keep the set. The agreement expressly gave both him and defendant the unilateral right to terminate the agreement at any time. Defendant's only right was to collect this rent each week and plaintiff only obligated himself to pay the rent for each additional week that he retained the set. The week-to-week rental is not a sum substantially equivalent to the set's value, and the transaction in question is, therefore, not a credit sale.

It is lamentable that ABC's advertising was misleading in that it prominently featured the rental purchase plan, a description of which, as testified by defendant's president, never became part of the written agreement between the parties. Undoubtedly, plaintiff's misunderstanding of the nature of the transaction stems from this fact, in addition to his failure to read the rental agreement he signed. Nevertheless, these are not matters for which the Consumer Leasing Act or the Truth in Lending Act provide a remedy or protection.

Accordingly, there shall be judgment entered herein for defendant dismissing plaintiff's suit at his cost.