**Jon LEMAY, Individually and on Behalf of All Others Similarly Situated**

v.

**STROMAN'S, INC., d/b/a Stroman's TV and Stereo Centers.**

**No. LR–C–80–144.**

United States District Court, E. D. Arkansas, W. D.

March 27, 1981.

James R. Cromwell, Thomas J. Ginger, Don Barnes, Central Ark. Legal Services, Little Rock, Ark., for plaintiff.

Eugene J. Mazzanti, Little Rock, Ark., for defendant.

## MEMORANDUM OPINION

ROY, District Judge.

The instant cause of action arose from an agreement entered into between the plaintiff and defendant wherein the plaintiff agreed to rent a television from the defendant. Under the terms of that agreement, the plaintiff was to pay a rental fee of $15.97 per week. He was obligated, under the terms of the contract, to pay only the first week of the rental. The agreement was terminable by either party under certain circumstances. Should the plaintiff rent the television for a period of 78 consecutive weeks, the television would belong to him. During the term of the agreement, should plaintiff continue to rent the television, the defendant would be responsible for all maintenance on the set. (See Appendix).

The plaintiff contends that the defendant violated the credit sale provision of the Truth in Lending Act, 15 U.S.C. §§ 1631, *et seq.*, and Federal Reserve Regulation Z, 12 C.F.R. §§ 226, *et seq.*, in that the defendant failed to make all the disclosures required before the transaction was consummated, to provide meaningful information as to the cost of credit prior to the sale, to disclose the cash price of the property, the sum of any amounts credited as downpayment, the difference between the cash price of the property purchased and the sum of any amounts credited as downpayment and all other charges, individually itemized, which are included in the amount of credit extended but not part of the finance charge. The plaintiff claims that the plaintiff also failed to disclose the total amount to be financed, the amount of the finance charge, the finance charge expressed as an annual percentage rate, the default, delinquency or similar charges payable in the event of late payments, a description of any security interest held or to be retained or acquired by the defendant and a clear identification of the property to which the security interest relates, the date on which the finance charge begins to accrue if different from the date of the transaction, a description of any penalty charge that may be imposed by the defendant for prepayment of the principal of the obligation, identification of the method of computing any unearned portion of the finance charge in the event of prepayment in full, any amounts required to be deducted, and the difference between the amounts for full-term payment and prepayment.

The plaintiff also claims that the transaction between the plaintiff and the defendant was a "consumer lease" as defined in 15 U.S.C. § 1667(1), and that the defendant also violated the consumer lease provision of the Truth in Lending Act. The plaintiff alleges a similar series of offenses under that provision.

The plaintiff also claims that the provisions of the agreement violate the Arkansas constitutional usury limit and that the contract was unconscionable. Plaintiff claims that he understood that the rental agreement was to be, instead, an agreement whereby he was making an ordinary credit purchase of the television.

The defendant has filed a Motion for Summary Judgment which is the subject of this Opinion.

This lawsuit is not a matter of first impression. From a study of the cases addressing the application of the Truth in Lending Act to rent-to-buy agreements, in fact the terms and language of the contract appear to be fairly uniform, and they have been challenged on the same basis in other Courts. In most of the previous cases, the Courts have found that the rent-to-buy agreement did not come within the purview of the Truth in Lending Act. *Dodson v. Remco Enterprises, Inc.*, 504 F.Supp. 540 (E.D.Va. Dec. 23, 1980); *Smith v. ABC Rental Systems of New Orleans, Inc.*, 491 F.Supp. 127 (E.D.La.1978). Unpublished cases include *Clark v. Aquarius TV Rentals, Inc.*, Civ. Action No. CA–4–77–3 (N.D.Tex. 1977); *Griggs v. Easy TV Rentals, Inc.*, Civ. Action No. C–75–2509A (N.D.Ga.1976); *Terrell v. Mr. T's Rental*, Civ. Action No. C–75–2058A (N.D.Ga.1976); and *Turner v. Curtis Mathes Centers, Inc.*, Bky. No. 3–78–1135(D) (D.Minn.1979). The sole dissenting voice among these decisions is *Waldron v. Best TV and Stereo Rentals, Inc.*, 485 F.Supp. 718 (D.Md.1979).

Section 103(g) of the Truth in Lending Act, 15 U.S.C. § 1602(g), defines a credit sale as:

... any sale with respect to which credit is extended or arranged by the seller. The term includes any contract in the form of a bailment or lease if the bailee or lessee contracts to pay as compensation for use a sum substantially equivalent to or in excess of the aggregate value of the property and services involved and it is agreed that the bailee or lessee will become, or for no other or a nominal consideration has the option to become, the owner of the property upon full compliance with his obligations under the contract.

"Credit sale" is also defined at 12 C.F.R. § 226.2(t) and is substantially the same.

From a reading of the rental agreement entered into between the parties, it is clear that the terms of that agreement do not bring the transaction within the definition of a credit sale. A reading of the claims of violations thereunder as alleged by the plaintiff in light of the terms of the contract involved herein demonstrates that the credit sale provisions of the Truth in Lending Act are irrelevant to this transaction. The alleged violations, when put into the context of the contract which is the subject of this lawsuit, clearly do not apply. They do not address the terms and conditions of the parties' agreement. The plaintiff did not agree to pay "a sum substantially equivalent to or in excess of the aggregate value of the property and services involved," nor is the plaintiff to become "the owner of the property upon full compliance with his obligations under the contract." The sole payment the plaintiff agreed to make and was obligated to make was the first week's payment for rent. Thereafter, if he chose to keep the television for another week, he could pay the rent. Otherwise, the defendant would pick up the television from the plaintiff's residence, for a $5.00 charge. It is clear, therefore, that the plaintiff was not obligated to pay more than $15.97 for the first week's rent and, prospectively, $5.00 for the pickup. The transaction was not, under the terms of the Truth in Lending Act nor its corollary, Regulation Z, a "credit sale."

Regulation Z, 12 C.F.R. § 226.2(mm), provides a definition of "consumer lease:"

"Consumer lease" means a contract in the form of a bailment or lease for the use of personal property by a natural person primarily for personal, family or household purposes, for a period of time exceeding four months, for a total contractual obligation not exceeding $25,000 whether or not the lessee has the option to purchase or otherwise become the owner of the property at the expiration of the lease.

Under the above definition, the agreement herein does not fit into the category of a consumer lease. There is no requirement that the plaintiff rent the television for four months, only for one week. Therefore, the agreement which is the subject of this lawsuit is not what is contemplated in either 15 U.S.C. § 1667(1) or Regulation Z, 12 C.F.R. § 226.2(mm).

The agreement between the parties herein was neither a "consumer lease" nor a "credit sale." Therefore, it does not come within the purview of the Truth in Lending Act, and summary judgment for the defendant is appropriate.

■ However, the summary judgment, a judgment on the merits, goes only to the allegations of violations of the Truth in Lending Act. The plaintiff also raises other questions concerning usury, unconscionability and possible common law fraud. The Truth in Lending Act being inapplicable to the facts of this case, this Court no longer has jurisdiction, and the Court will not render judgment on those issues. The plaintiff might want to raise those issues in a lawsuit filed in State court, and this summary judgment, going only to the Truth in Lending allegations, does not preclude the plaintiff from doing so.

A separate Order shall be entered herein in accordance with this Opinion.

# APPENDIX
## RENTAL AGREEMENT WITH OPTION TO PURCHASE     8457

DATE 1-20-79 19____

RENTAL COMPANY Stromnas TV

ADDRESS SW City Mall

Little Rock, Ark.

PHONE 562-0498

INVENTORY STOCK # 1256A

RENTER Jon Lemay

RESIDENCE ADDRESS 1922 Pulaski

APARTMENT ____   PHONE 374-3549

CITY L.R.   CITY ____   STATE Ark.

ITEM Color Console   BRAND CM

MODEL C546   SERIAL 83406727

RENTAL RATE PER WEEK (INCLUDES STATE AND LOCAL TAXES IF APPLICABLE) 15.97

IN HOME PICK-UP CHARGE 5.00

3 Weeks Rent $47.9

$ ____ Sat. 1-20-79

COMMENCEMENT DATE OF RENTAL TERM   DAY OF WEEK   DATE

## THIS IS A RENTAL AGREEMENT WITH OPTION TO PURCHASE

THE UNDERSIGNED HEREIN CALLED "RENTER", WHETHER ONE OR MORE DO JOINTLY AND SEVERALLY HEREBY RENT FROM THE RENTAL COMPANY HEREIN CALLED "OWNER", THE ABOVE DESCRIBED PERSONAL PROPERTY, HEREIN CALLED "PROPERTY", AT THE RENTAL RATE SET FORTH ABOVE, PAYABLE WEEKLY IN ADVANCE FOR A WEEK-TO WEEK TERM BEGINNING ON THE COMMENCEMENT DATE STATED ABOVE.

### THIS IS A WEEK-TO-WEEK RENTAL AGREEMENT WITH AN OPTION TO PURCHASE

TITLE AND OPTION: TITLE REMAINS AT ALL TIMES IN THE OWNER DURING THE TIME WHICH THIS RENTAL OPTION AGREEMENT IS IN EFFECT. IF RENTER CHOOSES TO RENT THIS EQUIPMENT FOR____CONSECUTIVE (IN A ROW) WEEKS AT THE WEEKLY RENTAL CHARGE SHOWN ABOVE, AND FULFILLS ALL OTHER TERMS AND CONDITIONS OF THIS AGREEMENT, TITLE TO THE EQUIPMENT SHALL, AT THE END OF____WEEKS, BE TRANSFERRED TO RENTER IN THE FORM OF A PAID RECEIPT. THE RENTER RECEIVES USE AND POSSESSION OF THE PROPERTY FOR SUCCESSIVE ONE WEEK TERMS SO LONG AS WEEKLY RENTAL PAYMENTS ARE MADE ON OR BEFORE THE DATE DUE AND RENTER COMPLIES FULLY WITH ALL AGREEMENTS AND CONDITIONS HEREOF AND UNLESS THIS AGREEMENT IS TERMINATED AS PROVIDED HEREIN.

IN HOME PICK UP CHARGE. THIS AGREEMENT DOES NOT BEAR INTEREST AND THERE IS NO DEFAULT OR LATE CHARGE. HOWEVER, IF THE RENTER WISHES TO RENT THE EQUIPMENT DESCRIBED ABOVE FOR MORE THAN ONE WEEK THE PAYMENT FOR THE SECOND WEEK IS DUE ON THE SAME DAY OF THE FOLLOWING WEEK, AND LIKEWISE, AS TO EACH ADDITIONAL WEEK THE RENTER WISHES TO RENT THE EQUIPMENT. IF THE RENTER DOES NOT MAKE HIS PAYMENT WHEN DUE AND THE OWNER SENDS AN EMPLOYEE TO THE PLACE WHERE THE EQUIPMENT IS LOCATED TO PICK UP THE EQUIPMENT AT THAT TIME AND/OR COLLECT THE MONEY DUE, THEN AND ONLY THEN, SHALL THE OWNER BE ENTITLED TO RECEIVE $5.00 FOR MAKING THE TRIP TO THE CUSTOMER'S HOME OR OTHER PLACE WHERE THE EQUIPMENT IS LOCATED. THIS CHARGE IS SHOWN ABOVE AS AN "IN HOME PICK UP CHARGE."

1. TERMINATION BY RENTER. RENTER AT ITS OPTION MAY AT ANY TIME TERMINATE THIS AGREEMENT BY RETURN OF THE PROPERTY TO OWNER IN ITS PRESENT CONDITION FAIR WEAR AND TEAR EXCEPTED AND BY PAYMENT OF ALL RENTAL PAYMENTS DUE ON OR DURING THE WEEK OF TERMINATION. RENTER IS REQUIRED TO RENT THIS EQUIPMENT FOR ONLY ONE WEEK.

2. TERMINATION BY OWNER. THIS AGREEMENT SHALL AT THE OPTION OF THE OWNER AND WITHOUT NOTICE TERMINATE UPON THE FAILURE OF RENTER TO MAKE EVERY RENTAL PAYMENT REQUIRED HEREIN ON THE DATE DUE OR BY BREACH BY THE RENTER OF ANY AGREEMENT, CONDITION OR REPRESENTATION, ALL OF WHICH ARE AGREED TO BE MATERIAL. ON TERMINATION RENTER SHALL IMMEDIATELY RETURN THE PROPERTY TO OWNER IN ITS PRESENT CONDITION, FAIR WEAR AND TEAR EXCEPTED, AND RENTER SHALL REMAIN LIABLE FOR ALL PAYMENTS HEREUNDER TO THE DATE OF TERMINATION AND FOR THE PERFORMANCE OF ALL AGREEMENTS AND CONDITIONS HEREOF.

3. LOCATION OF PROPERTY. RENTER WARRANTS AND AGREES THAT IT WILL KEEP SAID PROPERTY IN ITS POSSESSION AT THE RESIDENCE ADDRESS ABOVE AND WILL NOT REMOVE SAID PROPERTY FROM SAID ADDRESS WITHOUT AGREEMENT IN WRITING EXECUTED BY THE OWNER. IF RENTER MOVES SAID PROPERTY WITHOUT SECURING PRIOR AGREEMENT IN WRITING FROM OWNER, THIS AGREEMENT SHALL BE THEREBY BREACHED GIVING THE OWNER THE RIGHT OF IMMEDIATE POSSESSION AND RENTER SHALL BE LIABLE FOR PROSECUTION UNDER APPLICABLE STATE LAWS.

4. DAMAGES. RENTER IS FULLY RESPONSIBLE FOR THE LOSS, THEFT OR DESTRUCTION OF SAID PROPERTY FROM ALL CAUSES WHATEVER AND AGREES TO PAY TO THE OWNER THE FAIR MARKET VALUE OF THE PROPERTY IN SUCH EVENT. IN THE EVENT OF DAMAGE, AND OR PARTIAL DESTRUCTION FROM ANY CAUSE WHATEVER, RENTER AGREES TO PAY TO THE OWNER A REASONABLE COST OF REPAIR TO SAID PROPERTY.

5. ASSIGNMENT. THIS AGREEMENT MAY BE SOLD, TRANSFERRED AND ASSIGNED BY OWNER WITHOUT RESTRICTION RENTER HAS NO RIGHT TO ASSIGN, SUBLEASE OR TRANSFER HIS RIGHTS HEREIN WITHOUT THE WRITTEN CONSENT OF OWNER.

6. MAINTENANCE. THE OWNER DOES HEREBY AGREE TO MAINTAIN THE PERSONAL PROPERTY IN GOOD WORKING ORDER AND ANY AND ALL MAINTENANCE OR REPAIRS TO THE PROPERTY OF THE OWNER RENTED HEREUNDER MUST BE PERFORMED BY THE OWNER AND THE OWNER WILL NOT BE RESPONSIBLE FOR COSTS OF ANY REPAIRS DONE AT THE REQUEST OF THE RENTER BY OTHERS.

7. OWNER'S RIGHT TO ENTER AND TAKE POSSESSION. THE OWNER AND ITS AGENTS UPON THE TERMINATION OF THIS AGREEMENT ARE SPECIFICALLY AUTHORIZED TO PEACEABLY ENTER UPON ANY PREMISES WHERE THE PROPERTY MAY BE FOUND AND RENTER AGREES TO ALLOW OWNER TO TAKE POSSESSION OF AND REMOVE THE PROPERTY WITHOUT LIABILITY, AND OWNER AND ITS AGENTS ARE HEREBY RELEASED AND DISCHARGED FROM ANY CLAIM OR CAUSE OF ACTION IN OR RELATING TO ENTRY AND TAKING POSSESSION IN ACCORDANCE WITH THIS AGREEMENT AND RENTER AGREES TO INDEMNIFY OWNER AND ITS AGENTS FOR ALL COSTS, EXPENSES, AND DAMAGES OCCURRING DIRECTLY OR INDIRECTLY FROM OR RELATED TO THE TAKING POSSESSION AND THE REMOVAL OF SAID PROPERTY

RENTER HAS NO RIGHT TO SELL, MORTGAGE, PAWN, PLEDGE, ENCUMBER, OR DISPOSE OF SAID PROPERTY OR TO MOVE SAID PROPERTY FROM THE RESIDENCE ADDRESS LISTED ABOVE. TO DO SO IS A BREACH OF THIS AGREEMENT AND RENTER SHALL BE LIABLE UNDER APPLICABLE STATE LAW.

### TIME IS OF THE ESSENCE OF THIS AGREEMENT.

THIS RENTAL AGREEMENT MAY BE MODIFIED, VARIED, ALTERED, OR EXTENDED, OR THE AGREEMENTS OR CONDITIONS HEREOF WAIVED, ONLY BY AGREEMENT IN WRITING EXECUTED BY THE OWNER. RENTER ACKNOWLEDGES RECEIPT OF SAID PROPERTY IN SATISFACTORY OPERATING CONDITION.

## I HAVE READ AND UNDERSTOOD THE ABOVE RENTAL AGREEMENT AND A COMPLETED COPY OF THIS AGREEMENT HAS BEEN DELIVERED TO ME.

Renter Jon LeMay

Renter ____

ORIGINAL