(677 P.2d 567)
No. 55,026

REMCO ENTERPRISES, INC., *Appellee/Cross-Appellant,* v. ALICE HOUSTON, *Appellant/Cross-Appellee.*

Opinion filed February 9, 1984.

*Paul Rasor,* of Topeka, and *Luis Mata,* of Wyandotte County Legal Aid Society, Inc., of Kansas City, for the appellant/cross-appellee.

*Charles R. Wall,* of Shook, Hardy & Bacon, of Overland Park, and *Barkley Clark,* of Lawrence, for the appellee/cross-appellant.

Before ABBOTT, P.J., PARKS, J., and HARRY G. MILLER, District Judge Retired, assigned.

MILLER, J.: The defendant Alice Houston appeals from the trial court's denial of her two counterclaims against the plaintiff Remco Enterprises, Inc. The plaintiff cross-appeals from the trial court's denial of its petition seeking past-due rental payments and possession of a television set which plaintiff had rented to defendant.

The plaintiff is in the business of renting television sets and other appliances. At the time of the trial, the defendant was a 20-year-old single mother of three who had completed only the ninth grade in school and was dependent upon aid to dependent children welfare payments of $320 per month.

On September 11, 1980, plaintiff and defendant entered into a rental agreement with an option to purchase a stereo component

set. This agreement provided that if the defendant made 69 weekly payments of $12 each, she would become the owner of the stereo set.

On September 13, 1980, plaintiff and defendant entered into a rental agreement with an option to purchase a console color TV set. This agreement provided that if the defendant made 104 weekly payments of $17 each, she would become the owner of the TV set.

Both agreements were identical but for the number and the amount of payments, and provided that defendant could cancel the agreement at any time by returning the rented property. The agreements also obligated the plaintiff to maintain the equipment.

Defendant complied with the agreement for the stereo set and made the final payment to plaintiff on January 4, 1982. Plaintiff accordingly transferred the ownership of the stereo set to the defendant. On January 23, 1982, with 36 weekly payments remaining on the TV set, defendant made her last payment. On February 1, 1982, plaintiff sued the defendant to recover the TV set and past-due rental payments. The defendant counterclaimed alleging that plaintiff had violated the Truth in Lending Act (TILA), 15 U.S.C. § 1601 *et seq.* (1976) and amendments thereto, and the unconscionability provisions of the Kansas Consumer Protection Act, K.S.A. 50-623 *et seq.* and amendments thereto. The trial court denied both of defendant's counterclaims as well as plaintiff's petition for rental due and possession of the set, and declared the defendant to be the owner of the TV set with no further indebtedness due to the plaintiff.

In Count I of defendant's counterclaim, the defendant alleged that the "Rental Agreement with Option to Purchase" covering the TV set was in fact a disguised credit sale, and that plaintiff violated the TILA and Regulation Z, 12 C.F.R. § 226 (1980), by failing to disclose the amount of the finance charge and by failing to express the amount of the finance charge in an annual percentage rate as is required by 15 U.S.C. § 1638(a)(6), (7) (1976); 12 C.F.R. § 226.8(b)(2) and § 226.8(c)(8) (1980). Plaintiff argues that the above disclosures were not required since the agreement was not a "credit sale" within the meaning of the TILA.

15 U.S.C. § 1602(g) (1976) defines a credit sale as:

"any sale with respect to which credit is extended or arranged by the seller. The

term includes any contract in the form of a bailment or lease if the bailee or lessee *contracts to pay* as compensation for use a sum substantially equivalent to or in excess of the aggregate value of the property and services involved and it is agreed that the bailee or lessee will become, or for no other or a nominal consideration has the option to become, the owner of the property upon full compliance with his obligations under the contract." (Emphasis supplied.)

Regulation Z contained the same definition of "credit sale" when plaintiff and defendant entered into the rental agreement. See 12 C.F.R. § 226.2(t) (1980).

Plaintiff does not contest that defendant had the option to become the owner of the TV set for no additional consideration upon her compliance with her contractual obligations. Nor does plaintiff contest defendant's assertion that the total payments required over the 104-week period, $1,768, was in excess of the aggregate value of the TV set. Rather, plaintiff argues that because the defendant had the right to terminate the agreement at any time after making the first week's payment of $17, she was not contractually obligated to pay any sum substantially equivalent to or in excess of the aggregate value of the TV set which had a retail value of $850.

The rental agreement makes it clear that the defendant had the right to terminate the agreement at the end of any week without penalty in this provision:

"**TERMINATION BY RENTER:** Renter may terminate this agreement at the end of any rental period by return of the property to owner. Renter is *required* to rent the property for only one rental period."

The agreement also makes it clear that the "rental period" is for one week, and that plaintiff agrees to maintain the TV set in good working order and repair it during defendant's use and possession of it.

Although this issue is apparently one of first impression in this state, other jurisdictions have dealt with the issue in the context of "rent to own" agreements for TV sets and have reached different conclusions. Cases holding that such rental agreements are disguised "credit sales" within the meaning of the TILA focus on the remedial nature of the TILA; the substance and not the form of the agreement, *Clark v. Rent-It Corp.*, 685 F.2d 245 (8th Cir. 1982); the definition of "credit sale" found in the Uniform Commercial Code, *Waldron v. Best T.V. and Stereo Rentals, Inc.*, 485 F. Supp. 718 (D. Md. 1979); the intent of the parties, *i.e.*, the consumer's belief that he was in fact purchasing

and not renting the TV set and the large number of transactions by the seller in which the lessee eventually becomes the owner of the property, *Murphy v. McNamara,* 36 Conn. Supp. 183, 416 A.2d 170 (1979); and comparison to conditional sales agreements, *Johnson v. McNamara,* No. H-78-238 (D. Conn., April 13, 1979).

Cases holding that such rental agreements are not "credit sales" within the meaning of the TILA do so in reliance upon the "plain meaning rule" of contract interpretation, *LeMay v. Stroman's, Inc.,* 510 F. Supp. 921 (E.D. Ark. 1981); *Dodson v. Remco Enterprises, Inc.,* 504 F. Supp. 540 (E.D. Va. 1980); *Smith v. ABC Rental Systems of New Orleans, Inc.,* 491 F. Supp. 127 (E.D. La. 1978), *aff'd* 618 F.2d 397 (5th Cir. 1980); *Stewart v. Remco Enterprises, Inc.,* 487 F. Supp. 361 (D. Neb. 1980), or upon Federal Reserve Board staff opinions or letters, see *Blackshear v. S & S TV Rental,* No. C79-490 (N.D. Ohio, October 23, 1981).

When Congress framed the TILA, it delegated broad administrative law-making power to the Federal Reserve Board (FRB) by allowing it to promulgate regulations thereunder. The FRB was also entrusted with the duty to interpret and apply the TILA, and to issue official and unofficial staff opinions upon request. Unofficial staff opinions construing the TILA have consistently held that rental agreements that are terminable at will by the consumer are not "credit sales" within the meaning of the TILA because there is no contractual obligation to pay an amount equal to or in excess of the value of the property. See FRB Letter No. 701 dated July 31, 1973, Consumer Cred. Guide (CCH) ¶ 30,998; FRB Letter No. 761 dated March 12, 1974, Consumer Cred. Guide (CCH) ¶ 31,083; FRB Letter No. 750 dated January 11, 1974, Consumer Cred. Guide (CCH) ¶ 31,069; FRB Letter No. 1192 dated June 15, 1977, Consumer Cred. Guide (CCH) ¶ 31,623; and FRB Letter No. 1259 dated October 20, 1977, Consumer Cred. Guide (CCH) ¶ 31,718.

Plaintiff argues that the holding of the United States Supreme Court in *Ford Motor Credit Co. v. Milhollin,* 444 U.S. 555, 63 L.Ed.2d 22, 100 S.Ct. 790 (1980), mandates that this court accept any interpretation, official or unofficial, by the FRB of the sections of the TILA and Regulation Z involved in this dispute so long as such interpretation is not demonstrably irrational. We do

not agree. Our reading of *Milhollin* convinces us that while the Court stressed that there was a definite congressional preference for deciding interpretive issues by uniform administrative decisions rather than by piecemeal litigation which should be honored by the courts, its holding that staff opinions should be dispositive unless demonstrably irrational was not intended to encompass unofficial, informal public opinion letters.

In this state, our Supreme Court has recognized that staff attorneys for the FRB have acquired an expertise in such matters, and that while not dispositive, great deference should be paid to such staff opinions in construing the TILA. *Super Chief Credit Union v. Gilchrist*, 232 Kan. 40, 653 P.2d 117 (1982).

Legislative history also supports the conclusion that a rental agreement of the type involved here is not a "credit sale" within the meaning of the TILA. In 1978 an amendment was introduced in Congress seeking to specifically include such agreements within the definition of "credit sale." The amendment has never been enacted.

Modified Regulation Z, promulgated by the FRB subsequent to the passage of the Truth in Lending Simplification & Reform Act of 1980, in defining the term "credit sale" specifically excludes a bailment or lease that is terminable without penalty at any time by the consumer. 12 C.F.R. § 226.2(a)(16) (1983). This revised definition reveals the current intent of the FRB that rental agreements such as the one involved herein are not "credit sales" and are not subject to the disclosure requirements of the TILA or Regulation Z.

We therefore conclude that the trial court's ruling that the rental agreement between the plaintiff and the defendant was not a "credit sale" within the meaning of the TILA was not erroneous.

Defendant next contends that the trial court erred in not finding that the excessive price charged by plaintiff and the unfair advantage gained by the plaintiff due to the defendant's poverty and limited education violated the unconscionability provisions of the Kansas Consumer Protection Act, K.S.A. 50-623 *et seq.* and amendments thereto.

K.S.A. 50-623(*b*) states that the Kansas Consumer Protection Act is to be construed liberally to promote the policy of protecting consumers from suppliers who commit deceptive and un-

conscionable practices. Defendant's counterclaim was brought pursuant to K.S.A. 50-627(*b*)(1) and (2) which provide:

"(*b*) The unconscionability of an act or practice is a question for the court. In determining whether an act or practice is unconscionable, the court shall consider circumstances of which the supplier knew or had reason to know, such as, but not limited to the following:

"(1) That said supplier took advantage of the inability of the consumer reasonably to protect his or her interest because of his or her physical infirmity, ignorance, illiteracy, inability to understand the language of an agreement or similar factor;

"(2) that when the consumer transaction was entered into, the price grossly exceeded the price at which similar property or services were readily obtainable in similar transactions by like consumers."

This court in *Willman v. Ewen,* 6 Kan. App. 2d 321, 324, 627 P.2d 1190, *aff'd* 230 Kan. 262, 634 P.2d 1061 (1981), noted that:

"The Kansas Comment following K.S.A. 50-627 indicates that improper actions under this act are like improper acts under the Kansas Uniform Commercial Code."

Unconscionability is a doctrine under which courts may deny enforcement of unfair or oppressive contracts because of procedural abuses arising out of the contract formation, *or* because of substantive abuses relating to the terms of the contract, such as terms which violate reasonable expectations of parties or which involve gross disparities in price. See *Camerlo v. Howard Johnson Co.,* 545 F. Supp. 395 (W.D. Pa. 1982). Either abuse can be the basis for a finding of unconscionability.

The leading pronouncement on the doctrine of unconscionability in Kansas is *Wille v. Southwestern Bell Tel. Co.,* 219 Kan. 755, 549 P.2d 903 (1976). In that case, the court stated the purpose for the doctrine as follows:

"[T]he doctrine of unconscionability is used by the courts to police the excesses of certain parties who abuse their right to contract freely. It is directed against one-sided, oppressive and unfairly surprising contracts, and not against the consequence *per se* of uneven bargaining power or even a simple old-fashioned bad bargain. (1 Anderson [on the UCC] § 2-302.11, p. 401)." *Wille,* 219 Kan. at 759-60.

The court also held:

" '[T]hat *mere* disparity of bargaining strength, *without more,* is not enough to make out a case of unconscionability. Just because the contract I signed was proffered to me by Almighty Monopoly Incorporated does not mean that I may subsequently argue exemption from any or all obligation: at the very least, some

element of deception or substantive unfairness must presumably be shown. [Citation omitted.]" p. 759.

Defendant contends that the rental agreement was substantively unconscionable because the price charged for the TV set ($1,768) was more than 3 ½ times the wholesale value of the set ($500). See *Frostifresh Corp. v. Reynoso,* 52 Misc. 2d 26, 274 N.Y.S.2d 757 (1966), *rev'd on other grounds* 54 Misc. 2d 119, 281 N.Y.S.2d 964 (1967).

It is generally held, however, that it is the retail price of the goods that is the factor to be considered. See *Jones v. Star Credit Corp.,* 59 Misc. 2d 189, 298 N.Y.S.2d 264 (1969); *Toker v. Perl,* 103 N.J. Super. 500, 247 A.2d 701 (1968); *Murphy v. McNamara,* 36 Conn. Supp. 183. The Kansas Comment No. 2 to K.S.A. 50-627 states:

"Subsection (*b*)(2) [price unconscionability] includes such conduct as a home solicitation sale of a set of cookware to a housewife for $375 in an area where a set of comparable quality is *readily available* to such housewife for $125 or less." (Emphasis added.)

This comment also indicates that it is the fair market retail price and not the wholesale price, which is generally not "readily available" to an individual consumer, that is to be considered in determining price unconscionability.

In determining price unconscionability, there is no fixed ratio limit. The issue is to be determined by the court upon the basis of the peculiar circumstances of each case. Case law in other jurisdictions indicates that where the contract price is more than 2½ times the fair retail value of the goods, there is a greatly increased possibility that the contract will be declared to be unconscionable. 2 Anderson, Uniform Commercial Code § 2-302:56 (3rd ed. 1982); *Toker v. Perl,* 103 N.J. Super. 500; *Murphy v. McNamara,* 36 Conn. Supp. 183.

In the present case, the contract called for defendant to pay $1,768 for the set that had a retail value of $850. This allowed plaintiff a profit of $918, or an increase of 108% over the retail price, a near 2:1 ratio. No cases have been cited in which a comparable retail price discrepancy formed the basis for a finding of unconscionability.

The 108% markup in the present case does not shock the conscience of this court when the circumstances surrounding the execution of the contract, including its commercial setting and its

purpose and actual effect, are considered. See *Wille v. South-western Bell Tel. Co.*, 219 Kan. at 759.

Although defendant would have had to pay 108% more than a cash customer, defendant received the benefit of not being responsible for service or repairs to the TV set, of not having to undergo a credit check or make a down payment, and of having the option to return the set and cancel the agreement at any time after one week. Most importantly, she received the benefit and use of a TV set which she might not have otherwise had. Although in retrospect it may seem to have been a bad bargain, the price disparity does not rise to the level of unconscionability.

Defendant further argues that the agreement was procedurally unconscionable because of defendant's financial and educational background. The trial court found that defendant knew that she could return the set at any time she desired to terminate the agreement, that she knew how to multiply 104 (weeks) times 17 (dollars), that she was of average intelligence and was not taken advantage of by the seller. Defendant testified that she read the agreement and knew how to multiply. She fully complied with the stereo agreement, and exercised her option to purchase the stereo. The record is devoid of any evidence of any deceptive or oppressive practices, overreaching, intentional misstatements, or concealment of facts by plaintiff. See *Willman v. Ewen*, 6 Kan. App. 2d 321.

This court, in *Meyer v. Diesel Equipment Co., Inc.*, 1 Kan. App. 2d 574, 579, 570 P.2d 1374 (1977), stated:

"The trial court concluded that the defendant's conduct was unconscionable. We are not of a mind to now hold that defendant's complained-of conduct was unconscionable as a matter of law. With a concept so nebulous as 'unconscionability' involved, it is necessary that a certain amount of leeway be granted trial courts when deciding the unconscionability of acts. Our legislature recognized this and, accordingly, left the unconscionability question to be decided under the peculiar circumstances of each case."

The trial court did not err in finding that plaintiff did not violate the unconscionability provisions of the Kansas Consumer Protection Act.

Plaintiff, in its cross-appeal, contends that the court erred in denying its petition for replevin and for a monetary judgment. In view of the trial court's holding that plaintiff did not violate the Federal Truth in Lending Act, nor Regulation Z, nor the unconscionability provisions of the Kansas Consumer Protection Act,

there was no legal basis for holding that plaintiff could not enforce its contract. Accordingly, the trial court's ruling on the plaintiff's petition is reversed, and the court is directed to enter judgment that defendant either (1) pay all rental payments remaining on the contract which are now due and owing and, at her option, return or keep the TV set; or (2) accept the option given to her by plaintiff to pay the fair market value of the set as of the date of the trial.

The trial court's denial of defendant's counterclaims is affirmed.