**William CLARK, Appellant,**

v.

**The RENT–IT CORPORATION, Appellee.**

**No. 81–1558.**

United States Court of Appeals, Eighth Circuit.

Submitted Aug. 9, 1982.

Decided Aug. 13, 1982.

Rehearing Denied Sept. 15, 1982.

Susan Barnes Brammer, Des Moines, Iowa, for appellant.

Before HEANEY and McMILLIAN, Circuit Judges, and HENLEY, Senior Circuit Judge.

HEANEY, Circuit Judge.

William Clark appeals from the district court's April 24, 1981, order dismissing, pursuant to Fed.R.Civ.P. 12(b)(6), his lawsuit for damages under the Truth in Lending Act, 15 U.S.C. §§ 1601 *et seq.* (TILA).[1] *Clark v. Rent-It Corporation,* 511 F.Supp.

796 (S.D.Ia.1981). Because we conclude that the district court erred in dismissing Clark's suit solely on the pleadings before any evidence was presented, we reverse its judgment and remand for further proceedings.

In November, 1979, and again in February, 1980, Clark entered into contracts with Rent-It Corporation to "rent" a television set for seventeen dollars per week. In both instances, the parties executed standard form contracts that were supplied by Rent-It and that provided at the top in bold face type: "THIS IS A RENTAL AGREEMENT WITH OPTION TO PURCHASE." Under the agreements, Clark was entitled to become the owner of the television if he paid the weekly fee for seventy-eight consecutive weeks. The sole issue presented here is whether the "Rental Agreement with Option to Purchase" executed by Clark and Rent-It constituted a "credit sale" under the TILA within the meaning of 15 U.S.C. § 1602(g).[2] If the "Rental Agreement with Option to Purchase" constituted a "credit sale" under the TILA, Rent-It was required by 15 U.S.C. § 1638 to make certain disclosures to Clark. If, on the other hand, the agreement was not such a "credit sale," the TILA was not applicable, and Clark's complaint would not state a claim for relief under the federal statutory scheme. Clark has filed an appellate brief in this Court, but Rent-It has not despite repeated requests by our Clerk's office.

The case authority on the issue presented here is limited to a few decisions by district courts, which have split on the question.[3]

1. Clark also asserted several pendent state law claims which the district court dismissed pursuant to Fed.R.Civ.P. 12(b)(1) after dismissing his Truth in Lending Act claims. *Clark v. Rent-It Corporation,* 511 F.Supp. 796, 799 (S.D. Ia.1981).

2. 15 U.S.C. § 1602(g) provides:
    The term "credit sale" refers to any sale in which the seller is a creditor. The term includes any contract in the form of a bailment or lease if the bailee or lessee contracts to pay as compensation for use a sum substantially equivalent to or in excess of the aggregate value of the property and services involved and it is agreed that the bailee or

lessee will become, or for no other or a nominal consideration has the option to become, the owner of the property upon full compliance with his obligations under the contracts.

3. The decisions which have held that agreements similar to the one involved in this case are *not* "credit sales" covered by the TILA include: *Lemay v. Stroman's, Inc.,* 510 F.Supp. 921 (E.D.Ark.1981); *Dodson v. Remco Enterprises, Inc.,* 504 F.Supp. 540 (E.D.Va.1980); *Stewart v. Remco Enterprises, Inc.,* 487 F.Supp. 361 (D.Neb.1980); *Smith v. ABC Rental Systems of New Orleans, Inc.,* 491 F.Supp. 127 (E.D.La.1978), *aff'd,* 618 F.2d 397 (5th Cir. 1980) (brief per curiam opinion without analy-

The court below rejected the decisions holding that agreements like the one involved here were, or might be shown to be, "credit sales" because they "gloss[ed] over the limited obligation of the lessee." *Clark v. Rent-It Corporation, supra,* 511 F.Supp. at 798. It reasoned that because the "Rental Agreement with Option to Purchase" specifically obligated Clark to "rent" the television for "only one week,"[4] his obligations as a "weekly lessee" were much less than those of a purchaser under a conditional sales contract. Moreover, it rejected Clark's contention that under Iowa Code § 554.1201(37), the "Rental Agreement with Option to Purchase," was a security instrument, that is a conditional sales contract, rather than a true lease.[5] Finally, it concluded that discovery and further proceedings were not necessary prior to adjudication of the issue. *Clark v. Rent-It Corporation,* 511 F.Supp. at 798–799. Accordingly, it held that as a matter of law, the agreement between Clark and Rent-It did not constitute a "credit sale" as defined in 15 U.S.C. § 1602(g). It stated: "[a] lease giving an option to acquire title is a disguised 'credit sale' * * * only if the lessee is *obligated* to pay rent in an aggregate sum equal to or in excess of the value of the rented property." *Id.* at 799 (emphasis included). Clark filed a timely notice of appeal.

sis); and, apparently, several other unpublished district court decisions which have not been presented to this Court.

In contrast, the United States District Court for the District of Maryland held, in denying a defendant's motion to dismiss, that a "Rental Agreement With Option to Purchase" much like the agreement involved in this case did constitute a "credit sale" under the TILA. *Waldron v. Best T. V. and Stereo Rentals, Inc.,* 485 F.Supp. 718 (D.Md.1979). In addition, Clark appended three unpublished district court opinions in his brief in this Court which concluded that similar agreements might well constitute "credit sales" under the TILA. Therefore, those courts denied various defendants' pretrial motions to dismiss or for summary judgment. *Burks v. Curtis Mathes Centers, Inc.,* No. 4–79–429 (D.Minn., Nov. 14, 1980); *Jones v. Action TV Rental, Inc.,* No. 79–1535 (E.D.Pa., June 30, 1980); *Johnson v. McNamara,* No. H–78–238 (D.Conn., April 13, 1979).

4. The relevant provisions of the "Rental Agreement with Option to Purchase" provide:

TITLE AND OPTION: Title remains at all times in the owner during the time which this rental option agreement is in effect. If renter chooses to rent this equipment for 78 consecutive (in a row) weeks at the weekly rental charge shown above, and fulfills all other terms and conditions of this agreement, title to the equipment shall, at the end of 78 weeks, be transferred to renter in the form of a paid receipt. The renter receives use and possession of the property for successive one week terms so long as weekly rental payments are made on or before the date due and renter complies fully with all agreements and conditions hereof and unless this agreement is terminated as provided herein.

TERMINATION BY RENTER: Renter at its option may at any time terminate this agreement by return of the property to owner in its present condition fair wear and tear excepted and by payment of all rental payments due on or during the week of termination. Renter is *required* to rent this equipment for only one week.

*Clark v. Rent-It Corporation, supra,* 511 F.Supp. at 797 (emphasis in original).

5. The Uniform Commercial Code (UCC), codified in Iowa Code § 554.1201(37), provides in part:

Whether a lease is intended as security is to be determined by the facts of each case; however, * * * an agreement that upon compliance with the terms of the lease the lessee shall become or has the option to become the owner of the property for no additional consideration or for a nominal consideration does make the lease one intended for security.

Some courts have held that under this provision of the UCC, "leases" which give the "lessee" both an option to terminate at will and an option to purchase at the end of the "lease" period are conditional sales contracts rather than rental agreements. *See, e.g., Waldron v. Best T. V. and Stereo Rentals, Inc., supra,* 485 F.Supp. at 819–820. *See also* White and Summers, Uniform Commercial Code (2d ed. 1980), §§ 22–3, 22–4, at 880–888. The district court here, however, concluded that Iowa Code § 554.1201(37) did not aid Clark because he "could not become the owner of the TV set 'upon compliance with the terms of the lease.'" *Clark v. Rent-It Corporation, supra,* 511 F.Supp. at 798. That observation ignores the fact that Clark *could,* and was indeed *entitled* to become the owner of the television set if he complied with the terms of the "Rental Agreement with Option to Purchase"—that is, if he paid the seventeen dollars weekly "rental" fee for seventy-eight consecutive weeks. *See supra,* at n.4. The district court on remand should reconsider the applicability of Iowa Code § 554.1201(37) in this case.

Clark essentially argues in this Court that: (1) the district court erred in denying him an opportunity to offer evidence that would prove facts entitling him to relief under the TILA; and (2) the district court's analysis of the "Rental Agreement with Option to Purchase," the TILA, and the relevant case authority was unduly restrictive. We agree with both contentions.

Preliminarily, we are mindful of the general legal principles applicable to this case. The district court "is constrained by a stringent standard in passing on a Rule 12(b)(6) motion to dismiss." *Fusco v. Xerox Corp.,* 676 F.2d 332, 334 (8th Cir. 1982). This Court in *Fusco* explained:

> [A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Conley v. Gibson,* 355 U.S. 41, 45–46 [, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80] (1957) (footnote omitted). A complaint must be viewed in the light most favorable to the plaintiff and should not be dismissed merely because the court doubts that a plaintiff will be able to prove all of the necessary factual allegations. "Thus, as a practical matter, a dismissal under Rule 12(b)(6) is likely to be granted only in the unusual case in which a plaintiff includes allegations that show on the [face] of the complaint that there is some insuperable bar to relief [citations omitted]." *Jackson Sawmill Co. v. United States,* 580 F.2d 302, 306 (8th Cir. 1978), *cert. denied,* 439 U.S. 1070 [, 99 S.Ct. 839, 59 L.Ed.2d 35] (1979).

*Id.*

The TILA "is remedial in nature, and the substance rather than the form of credit transactions should be examined in cases arising under it." *Hickman v. Cliff Peck Chevrolet, Inc.,* 566 F.2d 44, 46 (8th Cir. 1976). Moreover, in interpreting agreements possibly covered by the TILA, "the practices of the trade, the course of dealing of the parties, and the intention of the parties in addition to specific contractual obligations" must be considered. *Joseph v. Norman's Health Club, Inc.,* 532 F.2d 86, 90 (8th Cir. 1976). The legislative history of the TILA shows that Congress was aware that "some creditors would attempt to characterize their transactions so as to fall one step outside whatever boundary Congress attempted to establish," *Mourning v. Family Publications Service, Inc.,* 411 U.S. 356, 365, 93 S.Ct. 1652, 1658, 36 L.Ed.2d 318 (1973), and that it intended to include within the statutory definition of "credit sales" purported leases "if they are, in essence, disguised sale arrangements." 1968 U.S. Code Cong. & Ad.News 1962, 1980.

█ In light of the foregoing legal principles, we hold that the district court committed reversible error by dismissing plaintiff's complaint. Moreover, we disagree with the district court's observation that evidence reflecting that Rent-It "enters into numerous similar transactions and that most customers keep [their] TV set[s] for 78 weeks and exercise the option to become its owner" is "irrelevant." *Clark v. Rent-It Corporation, supra,* 511 F.Supp. at 798–799. Such evidence is clearly relevant to Clark's explanation of the totality of the circumstances surrounding his transactions with Rent-It, and the parties' contractual expectations. *See* the decisions in note 3, paragraph 2, *supra,* at 247.

Clark argues that if given the opportunity he would attempt to show that: (1) when he signed the contracts with Rent-It, he was led to believe, and did in fact believe, that he was purchasing the television set; (2) Rent-It's business is aimed at low income customers who cannot obtain loans and who cannot afford to pay cash but who desire to purchase television sets; and (3) Rent-It entered into numerous transactions in which the "lessee" of its property eventually became owners of such property. Clark should be given an opportunity to substantiate these claims, and to establish that the "Rental Agreement with Option to Purchase" was in fact a disguised credit sale.

Accordingly, the district court's April 24, 1981, order is reversed and the case is remanded for further proceedings consistent with this opinion.